IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 07-38-JJF |
| CRISTIAN OREJUELA | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE AND STATEMENTS**

Defendant, Cristian Orejuela, by and through his undersigned counsel, hereby moves this Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3) and the Fourth and Fifth Amendments of the United States Constitution, for an Order suppressing the Government's use of any and all evidence obtained as a result of Mr. Orejuela's unlawful arrest on or about February 18, 2007, including all statements made during, or subsequent to, the unlawful arrest.

In support of this motion, Mr. Orejuela submits as follows:[1]

1. On February 18, 2007, Cpl. Jones received a dispatch that reported a shooting in the Fox Run Shopping Center parking lot. A general broadcast described the suspect's vehicle as a black Acura with Delaware temporary registration number "XB544988." Cpl. Jones conducted a computer check to identify the owners and discovered an Acura registered to Nubia Munoz at 2 Candlewick

---

[1] The facts contained in paragraphs 1-6 of this motion were taken from the Discovery. Mr. Orejuela cites these facts in his motion, but he does not concede that the events transpired as stated by the arresting officers. In paragraph 8 of this motion, Mr. Orejuela highlights key factual disputes in this matter and submits that an evidentiary hearing is needed to further develop the facts, which are determinative of this motion.

Court in New Castle, Delaware. Cpl. Jones contacted Sgt. Bartowski and informed him of the shooting.

2. Sgt. Bartowski and Detective Penrod apparently spearheaded the shooting investigation. Sgt. Bartowski reported to police headquarters and talked to Angel Santana, the alleged victim. Mr. Santana stated that he joined a fight that had started inside of Las Parlemeras, a bar, but he did not know the reason for the fight. Mr. Santana alleged that an unknown Hispanic male shot him in his foot as he walked to his car and fled the scene. Sgt. Bartowski also spoke to Fabiola Mena, Mr. Santana's girlfriend. Ms. Mena confirmed Mr. Santana's claims regarding the fight and shooting. The witnesses provided police with a basic description of the suspect and the license tag number of his vehicle. A third witness supposedly informed police that the suspect was known to him as "Cristian Munoz," and stated that he worked with him.

3. In the meantime, Cpl. Jones and Cpl. Reinbold arrived at the residence and saw a black Acura with Delaware temporary registration number "XB544986" parked in front of the residence. The vehicle's rear window was shattered, and Cpl. Jones alleged that he saw a Hispanic male peeking through the blinds of the residence. Cpl. Jones notified Recom, Sgt. Spagnolo and Sgt. Giles that the suspect's vehicle had been located. Cpl. Jones set up surveillance of the residence and vehicle and requested K-9 assistance.

4. Upon information and belief, Cpl. Jones, Sgt. Giles, Sgt. Spagnolo and Cpl. Reinbold knocked on the front door, immediately arrested Mr. Orejuela and transported him to the police station several hours later. During this time, Mr. Orejuela allegedly admitted to being involved in the shooting, and Cpl. Jones obtained written consent from Nubia Munoz to search the home and vehicle. The residential search produced no evidence, and the vehicle was towed.

5. Law enforcement officials alleged that they provided Mr. Orejuela with his <u>Miranda</u> rights, and he allegedly agreed to talk to Det. Penrod. Mr. Orejuela allegedly admitted to shooting Mr. Santana and stated that he threw the gun out of his car along Route 40 when he fled the scene. The gun was later recovered by Trooper Malkin along Route 40.

6. There are key factual disputes in this matter. Mr. Orejuela specifically contests the police officers' version and sequence of the facts regarding their actions. Additionally, Mr. Orejuela was interviewed by the police officers without receiving and/or understanding his <u>Miranda</u> rights.

7. On March 15, 2007, Mr. Orejuela was indicted for being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5).

8. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." <u>See</u> U.S. CONST. Amend. IV. In <u>Terry v. Ohio</u>, 392 U.S. 1, 19 (1968), the Supreme Court stated that "seizures" under the Fourth Amendment occur when law enforcement officials have "by means of physical force or show of authority . . . in some way restrained the liberty of a citizen."

9. A police officer must have probable cause to make an arrest. <u>Robinson v. Clemons</u>, 987 F.Supp. 280 (D.Del. 1998), citing <u>Terry</u>, 392 U.S. at 20; <u>Dunaway v. New York</u>, 442 U.S. 200 (1979) (stating that lengthy detentions beyond investigatory stops must be "based on consent or probable cause") quoting <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 881-82 (1975) ("Probable cause" means there are facts "sufficient to warrant a belief that the [suspect] has committed or is committing a crime . . . ."); <u>Payton v. New York</u>, 445 U.S. 573 (1980) (stating that the warrantless arrest of a person is a "species of seizure required by the (Fourth) Amendment to be reasonable").

10. In <u>Payton</u>, the Supreme Court stated that the Fourth Amendment prohibits the police

from making a warrantless, nonconsenual entry into a suspect's home in order to make a routine felony arrest. Cf. Steagald v. United States, 451 U.S. 204 (1981) (concluding that absent consent or exigent circumstances, the police may not enter a third party's home without a search warrant even in order to apprehend the suspect of an arrest warrant); Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997) (stating that the government bears the burden of demonstrating exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries).

11. Here, the police officers lacked probable cause to arrest Mr. Orejuela. Moreover, the officers did not have a search warrant or arrest warrant prior to arriving at the home and immediately arresting Mr. Orejuela, and there were no exigent circumstances present to overcome the presumption of unreasonableness. At best, the police officers suspected that Mr. Orejuela had allegedly committed a crime and may be present in the home. This suspicion alone, however, does not support his arrest. See e.g., Sharrar, 128 F.3d at 820 (stating that police belief that a suspect, who was located inside of a home, posed a danger and may have possessed a gun, did not constitute exigent circumstances that justified warrantless entry into the arrestee's home). Because Mr. Orejuela's arrest violated the Fourth Amendment, all evidence, including the firearm that was seized after Mr. Orejuela's arrest, must be suppressed in accordance with the "fruit of the poisonous tree doctrine" expressed in Wong Sun v. United States, 371 U.S. 471 (1963).

12. Mr. Orejuela further submits that any alleged statements made during, or subsequent to, his unlawful arrest should be suppressed pursuant to the Fifth Amendment and Miranda v. Washington, 384 U.S. 436, 444 (1966) (stating that a suspect subjected to custodial interrogation must be advised of his rights prior to making a statement); see also Wong Sun v. United States, 371 U.S. at 471.

13. Here, Mr. Orejuela contends that he did not knowingly, intelligently and voluntarily waive his Miranda rights. "A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually, and reliably determined." Jackson v. Denno, 378 U.S. 368, 380 (1964). Once the defendant challenges the admissibility of an alleged statement, the Government bears the burden of establishing compliance with Miranda and its progeny, and must demonstrate that the suspect knowingly, intelligently and voluntarily waived his or her rights. Id. at 444.

14. Mr. Orejuela reserves the right to file a Memorandum of Law in support of his Motion to Suppress Physical Evidence and Statements after the completion of an evidentiary hearing in this matter.

**WHEREFORE,** Mr. Orejuela respectfully submits that this Court conduct an evidentiary hearing to further develop the facts related to this motion and enter an Order suppressing the Government's use of any and all evidence obtained as a result of Mr. Orejuela's unlawful arrest on or about February 18, 2007, including all statements made during, or subsequent to, the unlawful arrest.

Respectfully submitted,

/s/
Edson A. Bostic
Federal Public Defender

Tieffa N. Harper
Research & Writing Attorney

Attorneys for Cristian Orejuela

Federal Defender's Office
District of Delaware
704 King Street, Suite 110
Wilmington, DE  19801
(302) 573-6010

Dated: May 10, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 07-38-JJF |
| | : | |
| CRISTIAN OREJUELA, | : | |
| | : | |
| Defendant. | : | |

## ORDER

**AND NOW**, this \_\_\_\_ day of _____, 2007, upon consideration of the Defendant's Motion to Suppress Physical Evidence and Statements, and the Government's response thereto, it is hereby ORDERED that the Motion is GRANTED.

All physical evidence seized by law enforcement officials on February 18, 2007, and statements made by Defendant to law enforcement officials on February 18, 2007, are hereby **SUPPRESSED**. Such physical evidence and statements shall be inadmissible, for any purpose, by the Government.

                                                                                   **BY THE COURT:**

                                                                                   _____
                                                                                   Honorable Joseph J. Farnan, Jr.
                                                                                   United States District Court Judge